**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2012
Decided November 21, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 11-2976

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:08-CR-95-TLS |
| DAMARCUS JOHNSON, *Defendant-Appellant.* | Theresa L. Springmann, *Judge.* |

**ORDER**

A police officer walked up to a car parked in a public parking lot and shined his flashlight into the window; he saw Damarcus Johnson sitting in the driver's seat, a gun protruding between the seat and the console, and crack-cocaine residue scattered across the front passenger's seat. The police arrested Johnson, searched the car, and seized the gun and a bag of crack found in the glove box. Johnson was charged with possessing with intent to distribute crack, 21 U.S.C. § 841(a)(1), carrying a gun during and in relation to the possession, 18 U.S.C. § 924(c), and possessing a firearm as a felon, 18 U.S.C. § 922(g). Before trial he moved to suppress the gun and drugs, but the district court denied the motion, and a jury found him guilty on all counts. The court, declining to apply the Fair Sentencing Act

of 2010 (FSA), Pub. L. No. 111-220, § 2(a)(1), 124 Stat. 2372, sentenced Johnson to a prior statute's mandatory minimum sentence of life imprisonment, *see* 21 U.S.C. § 841(b)(1)(A)(iii) (2006). On appeal Johnson challenges both the motion to suppress and his sentence in light of the recent Supreme Court decision in *Dorsey v. United States*, 132 S. Ct. 2321 (2012). We conclude that Johnson's conviction is sound but vacate the sentence and remand for resentencing pursuant to *Dorsey*.

The district judge made the following factual findings after hearing testimony from Johnson and his two arresting officers during two suppression hearings. One night in late 2008, Nicholas Lichtsinn of the Fort Wayne Police Department, wearing his police uniform and driving a marked car, drove through the parking lot of a local gentlemen's club. He often did this because he knew the club to be a haven for drug use and prostitution. He noticed a Bonneville sitting in a parking spot with its headlights on. Lichtsinn left the area but returned a few moments later and parked in a place where he could see the Bonneville without drawing attention to himself. He watched the idling car for a short period of time and saw nobody getting into or out of it.

When Lichtsinn approached the car from the rear passenger's side, he saw only one person, later identified as Johnson, sitting in the driver's seat. Lichtsinn shined his flashlight into the front window on the passenger's side. He saw Johnson immediately glance down; Lichtsinn followed Johnson's gaze with his flashlight and saw what Johnson was looking at—part of a handgun sticking out from between the passenger's seat and the center console. Lichtsinn also saw a white, powdery rock substance on the front passenger's seat. He tapped on the window with his flashlight and, after Johnson rolled the window down, asked Johnson if there were any weapons in the car; Johnson said no. Without letting Johnson know what he saw, Lichtsinn asked Johnson to put his hands on the steering wheel, and Johnson complied. Lichtsinn walked behind the car to the driver's side of the vehicle. He asked Johnson to get out of the vehicle and, after Johnson did so, handcuffed him and patted him down for weapons. By this time another officer, Ronald Coffelt, had arrived to the scene. Coffelt stood with Johnson while Lichtsinn ducked into the car and confirmed that what he had seen was a handgun. After Johnson was secured in the squad car, Lichtsinn searched the Bonneville and seized the gun, marijuana in a plastic bag found in the center console, and crack in a Crown Royal bag found in the glove box.

The district court denied Johnson's motion to suppress, in which he sought to exclude the evidence as resulting from an improper seizure, in violation of *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In his view, Lichtsinn lacked reasonable suspicion to "sneak up" on him while in his car, shine a flashlight into it, and question him. The district court denied the motion. The court concluded that Johnson was not seized when Lichtsinn shined his flashlight into the car because a reasonable person would have felt free to terminate the encounter. The court noted that at some point the encounter turned into a seizure, but only

after Lichtsinn saw the gun and the crack, the presence of which created at least reasonable suspicion to investigate further. Once Lichtsinn saw the gun and drugs, the court concluded, he had probable cause to search the car.

Before sentencing Johnson argued that the court should apply the FSA, which was enacted after his offense and reduced the sentencing disparity between cocaine base and powder cocaine offenses. *See* Pub. L. No. 111-220, § 2(a)(1), 124 Stat. 2372. The FSA mandates a minimum sentence of only 10 years' imprisonment for offenders like Johnson who possess between 28 and 280 grams of crack and have a prior conviction for a felony drug offense. *See* 21 U.S.C. § 841(b)(1)(B)(iii) (2006 & Supp. IV 2010). The district court followed *United States v. Fisher,* 635 F.3d 336 (7th Cir. 2011), *rehearing en banc denied,* 646 F.3d 429 (7th Cir. 2011), and concluded that the Act did not apply retroactively. Because Johnson possessed more than 50 grams of crack and had two prior felony drug convictions, he faced a mandatory minimum sentence of life imprisonment, see 21 U.S.C. § 841(b)(1)(A)(iii) (2006), which the court imposed.

On appeal Johnson argues that the district court erred in concluding that Lichtsinn seized him only after it was reasonable to think that criminal activity was afoot. As he did in his motion to suppress, Johnson asserts that a reasonable person would not have felt free to leave when Lichtsinn "snuck up" on the vehicle, shined his flashlight into the car, and immediately began questioning him. Lichtsinn lacked a reasonable suspicion to approach him and "continue his investigation," Johnson contends, because he was merely sitting in his car, talking on the phone, and not engaging in any apparent illegal activity.

We reject Johnson's contention because a citizen has a limited expectation of privacy in his car and thus Lichstinn was entitled to look through the car windows, see *New York v. Class,* 475 U.S. 106, 112–13 (1986); *Edmond v. Goldsmith,* 183 F.3d 659, 661 (7th Cir. 1999); *United States v. Ware,* 914 F.2d 997, 1000 (7th Cir. 1990); *Brumfield v. Jones,* 849 F.2d 152, 155 (5th Cir. 1988); *United States v. Head,* 783 F.2d 1422, 1426 (9th Cir. 1986), even with a flashlight, see *Texas v. Brown,* 460 U.S. 730, 739–40 (1983). And that is all he did before seeing the gun and drugs, which, as the district court properly concluded, undoubtedly gave him at least reasonable suspicion to investigate further. *See United States v. Bullock*, 632 F.3d 1004, 1014 (7th Cir. 2011); *United States v. Tinnie,* 629 F.3d 749, 752 (7th Cir. 2011).

Johnson also argues that the district court should have applied the FSA. As the government noted in a letter to the clerk of this court after oral argument, *Dorsey* held that the FSA applies retroactively to defendants like Johnson who committed their crimes before the Act went into effect but after they were sentenced. 132 S. Ct. at 2326. Accordingly, we **VACATE** Johnson's sentence and **REMAND** to the district court for resentencing in accordance with *Dorsey*.